UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:12-CV-180-R

DAMIEN A. SUBLETT                                                                                   Plaintiff

v.

RANDY WHITE, et al.                                                                              Defendants

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendants Amy Fisher, Chris Wilson, Jamie Caraway, James Beavers, Duke Pettit, Daniel Smith, Garth Thompson, Bruce Von Dwingelo, Randy White, and Earnest William's Motions for Summary Judgment. (Docket Nos. 54, 55, 56, 58.) Plaintiff Damien A. Sublett has responded. (Docket Nos. 61, 62, 71.) Defendants have replied. (Docket Nos. 63, 69, 76.) This matter is now fully briefed and ripe for adjudication. For the following reasons and consistent with the below opinion, the Court will **GRANT in part** and **DENY in part** Defendants' Motions for Summary Judgment. The only remaining claims are the failure to protect claims premised on the failure to place Plaintiff in protective custody as against Defendant Chris Wilson and Defendants James Beavers, Duke Pettit, Daniel Smith, Garth Thompson, Bruce Von Dwingelo, Randy White, and Earnest William.

Plaintiff Damien A. Sublett has also filed a Motion for Summary Judgment. (Docket No. 66.) Defendants Jamie Caraway, Amy Fisher, and Chris Wilson have responded. (Docket No. 71.) Plaintiff has replied. (Docket No. 78.) Plaintiff also filed additional declarations and an additional motion for summary judgment, (Docket Nos.

79, 80, 81, 82), to which Defendants have responded. (Docket No. 84.) This matter is now fully briefed and ripe for adjudication. For the following reasons, the Court will **DENY** Plaintiff Sublett's Motion for Summary Judgment. (Docket Nos. 66, 82.)

STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The plaintiff may accomplish this by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). Mere speculation will not suffice to defeat a motion for summary judgment; "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine

dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

DISCUSSION

<u>Defendants Amy Fisher and Jamie Caraway</u>

Plaintiff appears to claim Defendant Fisher verified his legal mail pursuant to Kentucky State Penitentiary (KSP) Policy 14-04-01 and also read his legal mail in violation of KSP Policy 14-04-01, both in violation of his Constitutional rights. (Docket No. 25.) Plaintiff also claims Defendant Caraway read his mail on June 4, 2013.[1] Defendants Fisher and Caraway argue that even accepting Plaintiff's version of the facts, they should be granted summary judgment on these claims. Specifically, Defendants argue that: (1) the Prison Litigation Reform Act (PLRA) bars these claims; (2) any review of mail was not a violation of Plaintiff's Constitutional Rights; and (3) they are entitled to qualified immunity.

I. Prison Litigation Reform Act (PLRA)

The PLRA requires that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 first exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of administrative remedies is mandatory under the PLRA and unexhausted claims cannot be brought in courts. *Jones v. Bock*, 549 U.S. 199, 211 (2007). The Supreme Court has previously held that a

---

[1] It appears that Plaintiff's allegations concerning verification and reading of his legal mail involved legal mail *to courts*, as opposed to mail to his attorneys.

requirement that that all defendants be named in a grievance "lacks a textual basis in the PLRA." *Id*. at 217. However, the Court also made clear that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218. "To exhaust his administrative remedies, a prisoner must adhere to the institutional grievance policy . . . ." *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (citing *Woodford v. Ngo*, 548 U.S. 91, 90-91 (2006)). "'This court requires an inmate to make 'affirmative efforts to comply with the administrative procedures,' and analyzes whether those 'efforts to exhaust were sufficient under the circumstances.'" *Id.* (quoting *Napier v. Laurel Cnty., Ky.*, 636 F.3d 1218, 224-25 (6th Cir. 2011)).

II. Plaintiff's Grievance Concerning Kentucky State Penitentiary Policy 14-04-01

Kentucky State Penitentiary Policy 14-04-01 states in relevant part:

> H. POSTAGE
> 1. The inmate shall pay postage for outgoing legal mail to attorneys and the courts, unless the inmate is certified as indigent.
>    a. Legal postage to attorneys and the courts shall be paid for indigent inmates.
>    b. The requesting inmate, regardless of indigency shall pay for certified or insured mail.
> 2. Indigent inmates requesting postage for outgoing mail to attorneys and the courts shall bring the mail to the mailroom. The material shall be unsealed at the time it is presented to the mailroom for indigency verification.
>    a. When indigency has been verified, the Program Director or his designee shall:
>       (1) Verify that the materials to be mailed are legal pleadings or correspondence qualified in Paragraph 1 of this section, and that they pertain to the indigent inmate.

> (2) Staff, when verifying indigency and legal materials, shall not read or censor the contents. If the material may not readily be recognized as legal material, the inmate shall be required to qualify the material.
> (3) Outgoing mail not meeting the criteria for indigent postage shall be returned to the inmate.

Plaintiff has filed a grievance on the issue of his mail being verified, but did not claim specifically that Amy Fisher read his mail.[2] (Docket No. 32-1.) Defendants allege this grievance was a generalized attack on KSP Policy 14-04-01 regarding outgoing indigent mail and the process of verifying that the mail is in fact legal mail. Plaintiff's "Brief Statement of the Problem" in his grievance states:

> On 2-8-2013 C.T.O. V. Lynn informed me that because I am an indigent inmate, I am required pursuant to policy to leave my outgoing legal mail un-sealed, to enable the mailroom or her self, to verify that it is legal mail. Or it will be sent back without verification.

(Docket No. 56-4, Page 7.) The Court agrees with Defendants that this grievance was a generalized attack on KSP Policy 14-04-01.[3]

III. Defendants' Argument Concerning Plaintiff's Failure to Specifically Mention Fisher or Caraway in the Grievance

Defendants argue that because Plaintiff's grievance makes no mention of Fisher or Caraway, Plaintiff failed to comply with CPP 14.6. CPP 14.6 requires inmates to include "all aspects of the issue and identify all individuals in the 'Brief Statement of the Problem' section of the written grievance so that all problems concerning the issue

---

[2] With respect to this particular grievance, Defendants do not contest Plaintiff fulfilled the requirements in the Kentucky Corrections Policies and Procedures (CPP) requiring an attempt to resolve the grievance through informal means, a written request to the Grievance Coordinator for a hearing, an appeal to the warden, and an appeal to the Commissioner of the Kentucky Department of Corrections.

[3] The Court notes that at no point during Plaintiff's extensive briefing, including filing multiple motions to amend, did he claim that this grievance was anything other than an attack on KSP Policy 14-04-01 and its application to him.

or individuals may be dealt with during step 1." (Docket No. 54-3.) However, despite the fact there was no identification of the individuals involved—other than C.T.O. V. Lynn who is not a party to this action—the prison addressed the grievance on the merits, upholding the policy.

The Sixth Circuit addressed a similar scenario in *Reed-Bey v. Pramstaller*, holding that "[w]hen prison officials decline to enforce their own procedural requirements and opt to consider an otherwise-defaulted claim on the merits, so as a general rule will we." 603 F.3d 322, 325 (6th Cir. 2010). In *Reed-Bey*, a prisoner injured his shoulder during a prison basketball game and filed a grievance complaining about the lack of follow-up care for the injury. *Id.* at 323. The policy required that the prisoner identify the "names of all those involved in the issue being grieved." *Id.* at 324. However, despite the prisoner's failure to specifically name those involved, the prison addressed the grievance on the merits. *Id.* at 324-25. The Sixth Circuit acknowledged that an inmate must "follow[] the 'critical procedural rules' of the prison's grievance process," which the inmate there had failed to do by not naming all the individuals involved as the relevant policy required. *Id.* at 324. But, the Sixth Circuit found, "for reasons of their own, [prison officials] overlooked (or perhaps forgave) this procedural failing and chose to address [the inmate's] grievance on the merits." *Id.*

Therefore, the Sixth Circuit declined to enforce a procedural bar that prison officials had not, concluding that the inmate properly exhausted his claim by proceeding through a complete round of grievance procedures and receiving a response on the merits at each step. *Id.* at 326. However, the facts in this case are arguably distinct

from *Reed-Bey* because here the alleged actions of Defendants Fisher and Caraway had not yet taken place at the time of the filing of the grievance.[4] Furthermore, Plaintiff's grievance specified an action separate and apart from any action by Fisher and Caraway, which was not the case in *Reed-Bey*.

In any event, Plaintiff argues that CPP 14.6(II)(E)—which essentially bars the filing of repetitious grievances during a six month period—would prohibit him from subsequently filing another grievance alleging Fisher and Caraway verified and read his legal mail for a period of six months following the filing of Grievance 13-02-018-G on February 8, 2013.[5] Defendants argue that even accepting that a grievance regarding allegations that Fisher and Caraway read his legal mail would have been deemed repetitious, it does not excuse Plaintiff's failure to comply with the exhaustion requirement under the PLRA by first filing a grievance alleging Fisher and/or Caraway read his mail because exhaustion is required even if the prisoner believes "the procedure

---

[4] Grievance 13-02-018-G was filed on February 8, 2013. With respect to Jamie Caraway, the alleged reading of Plaintiff's mail occurred on June 4, 2013. As to Amy Fisher, the alleged reading occurred on May 7, 2013, and May 24, 2013. Thus, it appears it would have been impossible for Plaintiff to specifically mention Fisher and/or Caraway in his grievance because their alleged actions would have not yet occurred at the time of the filing of the grievance. Plaintiff also alleges Fisher read his motion to amend at some unspecified date.

[5] CPP 14.6(II)(E) states:
>  E. Repetitious Grievances
>  1. An inmate shall not regrieve an issue that has been personally grieved within the past six (6) months.
>  2. If an inmate files a grievance that is essentially identical to a grievance of another inmate that has been filed and processed through the grievance steps within the past six (6) months, the Grievance Coordinator may provide the grievant with a copy of the Commissioner's previous decision instead of allowing the repetitive grievance to proceed through the normal process. If the grievant is not satisfied with the previous decision, he may appeal directly to the Commissioner. The grievant shall have three (3) working days from the date of the receipt of the Commissioner's previous decision to file the appeal.

to be ineffectual or futile." *Napier v. Laurel County*, 636 F.3d 218, 222 (6th Cir. 2011) (*quoting Pack v. Martin*, 174 F. App'x. 256, 262 (6th Cir. 2006)).

The Court notes the question as to whether Plaintiff exhausted his administrative remedies with respect to the individual claims against Defendants regarding his legal mail would be a close call. This is because *Reed-Bey* is arguably distinguishable from the case at hand—because the behavior of Fisher and Caraway occurred after the filing of the grievance—and because on its face *Napier* would appear to require Plaintiff to file a separate grievance, although it would be arguably "futile" based on CPP 14.6(II)(E). However, as will be discussed below, the Court need not decide this issue because two of Plaintiff's claims were not exhausted for separate reasons and the remaining, exhausted claim involving *verification* of legal mail *in the indigent inmate's presence* has already been held by this Court to be Constitutional. (*See, e.g.*, Docket Nos. 47, 48.)

IV. Plaintiff's Claims and the PLRA

When reviewing Plaintiff's lengthy and numerous briefings, it appears Plaintiff was attempting to make three claims regarding his legal mail. These claims are: (1) Plaintiff's legal mail was verified pursuant to KSP Policy 14-04-01—the subject of Plaintiff's grievance; (2) Plaintiff's legal mail was verified *outside his presence*; and (3) Plaintiff's legal mail was *read*. As the Court held above, Plaintiff's Grievance 13-02-018-G is a generalized attack on KSP Policy 14-04-01. This is significant with respect to claim (3) because a generalized attack on KSP Policy 14-04-01 is distinct from a claim that Defendants *read*, as opposed to *verified*, his legal mail. Additionally, the

responses Plaintiff received through the grievance process are significant with respect to claim (2) because they demonstrate the prison's practice of requiring verification and sealing of legal mail *in an indigent inmate's presence* and the prison's belief that the verification of Plaintiff's mail occurred in his presence. As will be discussed below, the Court will hold claims (2) and (3) are separate from the one made in Grievance 13-02-018-G for purposes of evaluating whether the requirement of exhaustion under the PLRA has been met.

Inspection policies concerning outgoing mail must "'further an important or substantial government interest unrelated to the suppression of expression,' and must not limit First Amendment freedoms 'greater than is necessary or essential to the protection of the particular governmental interest involved.'"[6] *Bell-Bey*, 87 F.3d at 838 (citing *Procunier v. Martinez*, 416 U.S. 396, 413 (1974)). However, this standard does not require a "least restrictive alternative" analysis of the prison regulation. *Id.* When previously ruling KSP Policy 14-04-01 was Constitutional, the Court stated:

> The Court finds that the KSP policy at issue here is similar to the policy in *Bell-Bey v. Williams*, 87 F.3d 832 (6th Cir. 1996), in that its aim is not to suppress free expression but to minimize postage costs incurred by the prison. It also puts limitations on the prison official's inspection in that the policy explicitly prohibits the prison official from reading or censuring the mail material. **The prison also requires the mail material to be read in the inmate's presence and permits the prisoner to seal the envelope once the mail is inspected.** Therefore, the policy itself does not violate the First Amendment.

---

[6] A different standard applies to the evaluation of regulations governing outgoing mail, as opposed to incoming mail. *See, e.g., Martucci v. Johnson*, 944 F.2d 291, 296 (6th Cir. 1991).

(Docket No. 47, Page 6) (emphasis added.)[7] Upon further review, the Court may have erred in stating that the policy requires the mail material be read in the inmate's presence and permits the prisoner to seal the envelope once the mail is inspected.[8] On the face of the policy, neither is a requirement. The Court incorrectly confused the *requirements* of the policy itself from the *statements made by the prison* during the grievance procedure. During the grievance procedure Plaintiff received the following responses to his grievance:

> Ms. Lynn is correct. **You are to present legal mail to unsealed** (only if you are indigent), **she is to scan it, then you are to seal it in her presence**, hand it back to her, and she is to directly hand-deliver it to the mailroom.
>
> * * *
>
> I have reviewed your grievance. As stated at all levels of the grievance, inmates who are indigent in segregation **shall present the outgoing legal mail unsealed to their CTO. The CTO then verifies that the materials are in fact legal mail. The mail is**

---

[7] The cases relied upon by Plaintiff are mainly concerned with the *reading* of legal mail and do not appear to involve indigent inmates who are seeking postage from a prison. Admittedly, Plaintiff cites an unpublished case that may shed some doubt on the constitutionality of a policy of verifying outgoing legal mail for which an indigent inmate is requesting postage. *Miller v. Jones*, 483 F. App'x. 202 (6th Cir. 2012) (unpublished case) (considering a claim involving *reading* of outgoing mail when an indigent prisoner is involved). *Miller* involved a standing issue and contained some broad language in *dicta* that could be construed as stating that a mere verification procedure would violate an indigent inmate's First Amendment rights. *Id.* However, this Court believes such a holding would be contrary to Sixth Circuit published precedent and that prison systems have a substantial interest in conserving economic resources by ensuring postage given to indigent inmates is in fact being used for legal mail.

In any event, the Court notes that Plaintiff never pleaded that he requested the verification/reading of his mail take place in his presence, although it is not clear whether the statement in *Sallier* that the opening of incoming legal mail outside a prisoner's presence is constitutionally concerning when there has been a request that it be verified/opened in their presence would apply in the situation here involving an indigent prisoner who needs postage for outgoing legal mail. *See Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir. 2003). The gist of Plaintiff's claims has always been that he takes issue with any verification/reading of his legal mail, without any indication he would prefer or asked for it to be read in his presence.

[8] The Court's prior holding may have been too broad because the policy—on its face—does not appear to require the mail to be read in the prisoner's physical presence. While the Court declines to comment determinatively on the issue because it is not before it, the Court notes that the lack of such a requirement could be potentially constitutionally problematic under some circumstances. However, as discussed below, assuming that Plaintiff is making a claim that mail was verified *outside his physical presence*, that is a separate claim that would need to be separately grieved and administratively exhausted.

> **then sealed in front of the inmate before being taken to the mail room.** If you will follow this procedure legal mail will be sent. Since this is outlined in policy I concur with the facility on this subject matter. No further response necessary.

(Docket No. 56-4, at 4, 7) (emphasis added.) As a result, it would have been clear that the prison's practice was to verify *in the inmate's presence* and give an opportunity to the inmate to seal the mail. If Plaintiff had experienced verification outside of his presence, he should have raised that issue during the appeal process, particularly when it became clear the prison believed verification occurred in his presence. Plaintiff also could have filed a separate grievance on that issue if he subsequently experienced verification outside his presence. Clearly, the prison's denial of his grievance was based in large part—if not primarily—on the notion the verification was occurring in Plaintiff's presence. As a result, a subsequent grievance would not have been deemed repetitive under CPP 14.6. In any event, exhaustion is required even if the prisoner believes "the procedure to be ineffectual or futile." *Napier v. Laurel County*, 636 F.3d 218, 222 (6th Cir. 2011) (*quoting Pack v. Martin*, 174 F. App'x. 256, 262 (6th Cir. 2006)).

Accordingly, Plaintiff's claims that Defendants verified legal mail *outside his presence* and *read* his legal mail are distinct, separate claims which would need to be administratively exhausted separately under the PLRA. The only claim that Plaintiff properly exhausted is verification of his legal mail in his presence and with the opportunity to seal the mail. As the Court previously stated, the application of the KSP Policy with the verification taking place in Plaintiff's presence and permitting either

Plaintiff to seal the mail or it be sealed in front of him is Constitutional.[9] As a result, the Court will **DISMISS** all of Plaintiff's claims regarding his legal mail[10] requiring postage because the verification procedure which takes place in his presence and permits Plaintiff to either seal the mail or it to be sealed in front of him is Constitutional and Plaintiff's other claims were not exhausted.[11] Because the Court finds that Plaintiff Sublett failed to exhaust administrative remedies with respect to these claims, it need not address Defendants' alternative arguments that any review of mail was not a violation of Plaintiff's Constitutional Rights and they are entitled to qualified immunity.

Defendant Chris Wilson

Plaintiff claims that Defendant Chris Wilson failed to protect him. Specifically, Plaintiff alleges on or about October 2012 he informed Wilson that a level five (5) inmate who was in a white supremacist gang threatened to kill him with a "shank" should he come out for recreation and that all Wilson did was inform his supervisor. (Docket No. 59, at 3.) Plaintiff argues Wilson should have taken further action, such as searching the inmate for weapons, placing him in protective custody, ensuring they did not have recreation together, speaking with the inmate, and/or issuing a disciplinary report.

---

[9] Again, the Court notes that its apparent holding that the policy as a whole is Constitutional may have been overly broad because on its face it does not appear to require verification in the prisoner's presence or the opportunity to seal the mail. However, since any potential error does not impact the Court's ultimate holding, the Court need not explore this issue further.

[10] It appears in subsequent documents submitted to the Court, Plaintiff may be attempting to make similar claims of reading/verifying legal mail against other Defendants. (*See* Docket No. 80.) To the extent Plaintiff was making similar claims of reading/verifying his legal mail against other Defendants, the Court would also dismiss those claims.

[11] The Court notes Defendants Fisher, Caraway, and Wilson have filed a certification of why discovery was not necessary before filing their pending motions for summary judgment. (Docket No. 57.) These Defendants primarily rely on the PLRA and the requirement that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 first exhaust his available administrative remedies. The Court agrees that further discovery prior to the filing of these motions is unnecessary.

I.   Failure to Protect Claim - Exhaustion Under the PLRA

Although different from the set of facts concerning Defendants Fisher and Caraway, the same exhaustion of remedies requirement under the PLRA is applicable to claims made against Chris Wilson. *Jones*, 549 U.S. 199, 211 (2007).  The process for filing a grievance is outlined in CPP 14.6.  Plaintiff has not produced or alleged that he submitted a grievance related to this particular incident or even one that generally addressed officers failing to protect him.  However, Plaintiff recently filed declarations arguing: "Plaintiff['s] failure to protect claim is predicated on defendants failure to provide protective custody which is a non-grievable issue" pursuant to CPP 10.2, 14.6, and 18.15.  (*See* Docket No. 81, 82.)

CPP 14.6 lists as a non-grievable issue: "Classification decision or appeal of a classification decision including transfer denial, recommendation, or approval." (Docket No. 81-2, at 2.)  CPP 18.5 states: "Inmates shall be placed in protective custody status as the result of a decision by the Classification Committee." (Docket No. 81-1, at 1.)  Thus, it appears Plaintiff's claim that Wilson failed to protect him, at least with respect to the failure to place him in protective custody, was a non-grievable issue under the CPP.

Defendants' argue that Plaintiff's contention that this was a non-grievable issue contradicts Plaintiff's earlier assertions that he did not necessarily want a change in his cell assignment, but rather wanted protection.  (Docket No. 84, at 1.)  While Plaintiff has not always been entirely clear on what basis he claims Defendants failed to protect him, the Court has always understood at least one basis as being the failure to place him

in protective custody—a classification decision under the CPP that is "non-grievable."[12] Therefore, the PLRA does not preclude this claim from proceeding.

However, to the extent Plaintiff makes failure to protect claims based on actions other than the failure to place him in protective custody, the Court agrees with Defendant that those claims were grievable as a "conditions-of-confinement." Accordingly, those claims were required to be exhausted under the PLRA. Plaintiff did not exhaust those claims. Therefore, the Court will **GRANT in part** Defendant Wilson's motion for summary judgment, as to the failure to protect claims based on anything other than the failure to place Plaintiff in protective custody.

II. Defendants' Substantive Arguments Regarding the Failure to Protect Claim

Notwithstanding the Court's holding that a claim based on a failure to place Plaintiff in protective custody was non-grievable and therefore the PLRA exhaustion requirements did not apply,[13] Defendants argue that claim should still be dismissed because "inmates do not have a constitutional right to a particular security classification or to be housed in a particular institution." (Docket No. 84, at 2.) Defendants' citations for this proposition are not applicable. *Marksberry* analyzed the collateral consequences of being housed in segregation. *Marksberry v. Chandler*, 126 S.W.3d 747, 751 (Ky. Ct. App. 2003). *Beard* involved the reclassification of a prisoner from minimum to medium security. *Beard v. Livesay*, 798 F.2d 874 (6th Cir. 1986). Neither case involved an allegation that a failure to place a prisoner in protective custody amounted to an Eighth Amendment violation because it was a failure to protect.

---

[12] Defendants appear to concede that, assuming the Court finds Plaintiff has made a failure to protect claim based on their refusal to put him in protective custody, such a claim was non-grievable under the CPP. (Docket No. 84, at 1-2.)

[13] Notably, Defendants appear to concede that this claim was non-grievable. (Docket No. 84, at 1-2.)

A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 828-29 (1994). However, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk even if the harm ultimately was not averted. A prison official's duty under the Eighth Amendment is to ensure 'reasonable safety,' a standard that incorporates due regard for prison officials' 'unenviable task of keeping dangerous men in safe custody under humane conditions.'" *Farmer v. Brennan*, 511 U.S. 825, 844 (1994) (citations omitted).

Defendant Wilson argues he acted "reasonably" because he was (1) was without authority to change Plaintiff's cell assignment; and (2) informed his supervisors of Plaintiff's concerns and his request to be moved. However, no discovery has occurred beyond that related to exhaustion of administrative remedies under the PLRA. Accordingly, it would be premature to dismiss this claim without permitting it to proceed for further development. Therefore, the Court will **DENY in part** Defendant Chris Wilson's motion for summary judgment and will let the claim against Defendant Wilson for "failure to protect" Plaintiff based on the failure to place him in protective custody proceed for further development. In permitting this claim to proceed, the Court passes no judgment on the ultimate outcome of the action.

<u>Defendants James Beavers, Duke Pettit, Daniel Smith, Garth Thompson, Bruce Von Dwingelo, Randy White, and Earnest William</u>

I.  Plaintiff's Injunctive Relief Claim

Plaintiff requests injunctive relief regarding the enforcement of the KSP indigent inmate legal mail policy, as well as relief regarding cell assignment at KSP. When the

Complaint was filed, Plaintiff was incarcerated at KSP in Eddyville, Kentucky. Plaintiff has since been transferred to Little Sandy Correctional complex in Sandy Hook, Kentucky. (*See* Docket No. 50, Plaintiff's Notice of Change of Address.) As a result of this transfer to a different prison, Plaintiff's claims for injunctive relief are moot. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (*citing Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)). Accordingly, the Court will **GRANT** summary judgment to Defendants on these claims.[14]

  II.   Exhaustion Under the PLRA and Plaintiff's Failure to Protect Claim

Plaintiff has not produced or alleged that he submitted a grievance claiming Defendants failed to protect him. However, Plaintiff recently filed declarations arguing that "Plaintiff['s] failure to protect claim is predicated on defendants failure to provide protective custody which is a non-grievable issue" pursuant to CPP 10.2, 14.6, and 18.15. (*See* Docket No. 81, 82.) As discussed above, the Court agrees that it appears Plaintiff would not have been able to grieve this issue under the CPP. Thus, it would appear the exhaustion requirements of the PLRA would not apply to this particular grievance.

Defendants argue that because Plaintiff admits any request for change in his cell assignment was granted, any other failure to protect claim being made would be based on "prison conditions" and, therefore, grievable. However, the Court finds that the decision to place or not place a prisoner in "protective custody" would be classification decision under the CPP. Accordingly, it is "non-grievable" and the PLRA will not bar this claim from proceeding.

---

[14] Plaintiff has conceded that his request for injunctive relief is moot. (Docket No. 82, at 1.)

Distinct from Defendant Chris Wilson, these Defendants did not argue they are entitled to summary judgment based on the merits of Plaintiff's Eighth Amendment claim. Instead, they relied completely on their argument that Plaintiff's failure to exhaust required dismissal. Having found that the exhaustion requirements of the PLRA are not applicable because this was a non-grievable issue, the Court will **DENY** Defendants' Motion for Summary Judgment.[15]

Plaintiff Damien A. Sublett's Motion for Summary Judgment Against Defendants Amy Fisher, Chris Wilson, and Jamie Caraway

With respect to the claims the Court granted Defendants' summary judgment on, the Court will **DENY** Plaintiff's Motions for Summary Judgment for the same reasons. With respect to the remaining failure to protect claims premised on Defendants' failure to place Plaintiff in protective custody, further discovery is necessary to determine whether summary judgment is appropriate. Therefore, the Court will also **DENY** Plaintiff's Motions for Summary Judgment on those claims.

CONCLUSION

For these reasons, and consistent with the Court's conclusions above,

IT IS HEREBY ORDERED as follows:

(1) **IT IS HEREBY ORDERED** that Defendants Jamie Caraway and Amy Fisher's motions for summary judgment, (Docket Nos. 54, 56), are **GRANTED**.

---

[15] As with Defendant Chris Wilson, the Court notes that any failure to protect claim based on anything other than a failure to place Plaintiff in protective custody—a classification decision under the CPP—would be grievable and barred under the PLRA.

As discussed above, to the extent Plaintiff was making any claims concerning reading or verification of his legal mail against these Defendants, the Court will dismiss those claims for the same reasons it dismissed those claims against Defendants Amy Fisher and Jamie Caraway.

(2) **IT IS HEREBY ORDERED** that Defendant Chris Wilson's motion for summary judgment, (Docket No. 55), is **GRANTED in part** and **DENIED in part.** The only remaining claim against Defendant Chris Wilson is the failure to protect claim premised on the failure to place Plaintiff in protective custody.

(3) **IT IS HEREBY ORDERED** that Defendants James Beavers, Duke Pettit, Daniel Smith, Garth Thompson, Bruce Von Dwingelo, Randy White and Earnest William's motion for summary judgment, (Docket No. 58), is **GRANTED in part** and **DENIED in part.** The only remaining claim against these Defendants is the failure to protect claim premised on the failure to place Plaintiff in protective custody.

(4) **IT IS HEREBY ORDERED** that Plaintiff Damien A. Sublett's motions for summary judgment, (Docket Nos. 66, 82), are **DENIED**.

(5) The only remaining claims in this action are the failure to protect claims premised on the failure to place Plaintiff in protective custody against Defendant Chris Wilson and Defendants James Beavers, Duke Pettit, Daniel Smith, Garth Thompson, Bruce Von Dwingelo, Randy White, and Earnest William.

IT IS SO ORDERED.

Date:

cc: Counsel

      Plaintiff Damien A. Sublett, pro se (#134575)
      Little Sandy Correctional Complex
      Route 5, Box 1000
      Sandy Hook, KY 41171